United States District Court
Southern District of Texas
**FILED**

DEC 1 6 2003

**Michael N. Milby
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA C. TAPIA, d/b/a § | | |
| GRUPO HONDURAS § | | |
|     Plaintiff, § | | |
| § | | |
| VS. § | CIVIL ACTION NO. B- **B-03-227** | |
| § | | |
| WING BRIDGE SHIPPING CO., INC. § | IN ADMIRALTY | |
| *in personam*, the M/V BEACON STRAIT, § | | |
| her engines, equipment, tackle, cargo, § | | |
| apparel, etc., *in rem*, § | | |
|     Defendants. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MARIA C. TAPIA, d/b/a GRUPO HONDURAS, Plaintiff, complaining of WING BRIDGE SHIPPING CO., INC., *in personam*, the M/V BEACON STRAIT, her engines, equipment, tackle, cargo, apparel, etc., *in rem*, Defendants, and for cause of action would respectfully allege as follows:

I.

### JURISDICTION

1.01. This is a case involving the admiralty and maritime jurisdiction of this Court as more fully appears hereafter, and plaintiff's claim is in admiralty and maritime within the meaning of Rule 9(h) and Supplemental Rules B and C of the Federal Rules Of Civil Procedure. This Court has subject matter jurisdiction under 46 U.S.C. § 31342 and 29 U.S.C. § 1333. The defendant vessel is or will be, during the pendency of this lawsuit, within this district and within the jurisdiction of this

honorable Court.

1.02. Alternatively, pendent jurisdiction exists by virtue of the diversity of the parties and the fact that the amount in controversy exceeds the jurisdictional requirements of the Court pursuant to 28 U.S.C.A. § 1332.

II.

PARTIES

2.01. Plaintiff, MARIA C. TAPIA, is an individual residing in Brownsville, Cameron County, Texas, who conducts a sole proprietorship known as GRUPO HONDURAS, with its principal place of business in Port Isabel, Cameron County, Texas.

2.02. Defendant, WING BRIDGE SHIPPING CO., INC., upon information and belief, is a Florida corporation, with its principal place of business being at 1016 Clemons St., Suite 403, Jupiter, Florida 33477. Service of process may be effected upon said corporate defendant by serving its registered agent, Craig Firing, at such address.

2.03. The Defendant Vessel, M/V BEACON STRAIT, is a foreign flag vessel and is expected to be within the Southern District of Texas and within the jurisdiction of this honorable Court, during the pendency of this lawsuit, where service of process may be had. Upon information and belief, the M/V BEACON STRAIT is owned by the corporate defendant, WING BRIDGE SHIPPING CO., INC.

III.

FACTS

3.01. On or about April 22, 2003, Defendant, WING BRIDGE SHIPPING CO., INC., hereafter "Wing Bridge" executed a Charter Agreement with Plaintiff MARIA C. TAPIA, d/b/a

GRUPO HONDURAS (hereafter "Grupo Honduras"). A true and correct copy of said Charter Agreement is attached hereto as Exhibit "A" and incorporated herein for all purposes.

3.02. Pursuant to the Charter Agreement, Wing Bridge was to have directed the M/V BEACON STRAIT to Port Isabel, Texas, for the purposes of loading automobiles, pick-up trucks, buses, trailers, cranes, crane sections and heavy machinery, which was the cargo to have been provided by Grupo Honduras. The vessel was to have arrived between April 25, 2003 and May 2, 2003. The cargo which was to have been provided by Grupo Honduras was to have generated an ocean freight of a minimum of $30,000.00. Said Charter Agreement provided that Plaintiff was to have the right to load up to 600 linear feet of trucks, buses and cranes, and up to 35 automobiles. Grupo Honduras was to have declared a final quantity of units at least 36 hours prior to the arrival of the vessel at Port Isabel, Texas.

3.03. Grupo Honduras fully complied with the terms and conditions of the Charter Agreement. When the vessel arrived, it was discovered that the vessel was partially loaded by cargo apparently taken on by the vessel at a previous port. Therefore, the vessel was unable to load the full cargo collected by Grupo Honduras for shipment on the vessel.

3.04. Seeking to minimize her damages, plaintiff loaded as much of the cargo as allowed on the vessel for shipment. Concurrently, Grupo Honduras requested that the vessel return on the next trip to pick up the remaining cargo which had been accumulated for shipment to Honduras.

3.05. Despite requests by Grupo Honduras that the defendants comply with the responsibility, terms and conditions of its Charter Agreement, the defendants failed to provide a subsequent vessel to take the remaining balance of the cargo to Honduras.

3.06. As a result of the breaches of the contract by defendants, plaintiff has damaged in the

sum of at least $160,000.00, with interest.

IV.

## MARITIME LIEN

4.01. By virtue of the foregoing breached Charter Agreement, plaintiff has and claims a maritime lien against the M/V BEACON STRAIT in the amount of at least $160,000.00, plus interest.

V.

## BREACH OF CONTRACT

5.01. Plaintiff sues the defendants for breach of contract in that the defendants failed to perform and fulfill the terms and conditions of the Charter Agreement (Exhibit "A"). In reliance upon such agreement, the plaintiff collected cargo and made contractual commitments. Shipment, likewise, was unable to fulfill as a result of the defendants' breach. Such breaches by the defendants have resulted in damages suffered by the plaintiff.

XI.

## ARREST OF DEFENDANT VESSEL

6.01. Plaintiff maintains a maritime lien against the M/V BEACON STRAIT for all damages which it has suffered. Plaintiff, therefore, seeks to foreclose on such maritime lien and seeks the seizure of the vessel.

6.02. Accordingly, Grupo Honduras would respectfully request that a substitute custodian be appointed, and that the defendant vessel M/V BEACON STRAIT be arrested and placed in custodial care so that defendant vessel will not be able to leave the jurisdiction of this court.

## XII.

## DAMAGES

7.01. As a result of the foregoing incident and breach of contract by the defendants, the plaintiff has been damaged in an amount in excess of $160,000.00.

7.02. Plaintiff also seeks pre- and post-judgment interest, expenses, and costs of litigation.

7.03. For all said damages, plaintiff claims a maritime lien upon said defendant vessel.

## XIII.

## ATTORNEYS' FEES

8.01. Plaintiff would further show the Court that by reason of the foregoing and in order to protect her interests, plaintiff has been required to retain the services of the undersigned attorney and is entitled to recover reasonable attorney's fees, plus costs of suit in connection with the collection of the damages set forth herein.

## XII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following:

9.01. That process in due form of law issue against WING BRIDGE SHIPPING CO., INC., *in personam*, and the M/V BEACON STRAIT, her engines, equipment, tackle, cargo, apparel, etc., *in rem*;

9.02. That process in due form of law be issued against Defendant WING BRIDGE SHIPPING CO., INC., and that a writ of attachment be issued against personal property owned by Defendant WING BRIDGE SHIPPING CO., INC., including any vessels owned by said Defendant which are or may come into the jurisdiction of this Court;

9.03.   That the defendant vessel, M/V BEACON STRAIT, her cargo, engines, equipment, tackle and apparel, etc., be arrested and condemned under the lien hereinbefore described;

9.04.   That such lien be foreclosed and that such vessel be ordered sold to pay the demands and claims of the Plaintiff herein;

9.05.   That all persons claiming an interest in the vessel be cited to appear and answer on oath, all and singular, the matters aforesaid;

9.06.   That it be decreed that any and all persons, firms, or corporations claiming any interest in the vessel are forever barred, foreclosed of and from all right of equity or redemption or claim of, in or to the vessel and any part thereof;

9.07.   That the Court render a judgment awarding Plaintiff its damages against the defendant, WING BRIDGE SHIPPING CO., INC., *in personam,* and defendant vessel, M/V BEACON STRAIT, her equipment, engines, tackle, cargo, apparel, etc., *in rem*, together with prejudgment interest at the maximum rate allowed by law, expenses incidental to the filing of this suit, reasonable attorney's fees, and costs of court;  and

9.08.   That Plaintiff have such other and further relief, both at law and in equity, to which she may be justly entitled.

Respectfully submitted,

SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284
(956) 546-3731 - Telephone
(956) 546-3765 or 3766 - Fax

By: _____
Dennis Sanchez
State Bar No. 17569600
Federal Bar No. 1594

ATTORNEYS FOR PLAINTIFF
MARIA C. TAPIA,
d/b/a GRUPO HONDURAS

## VERIFICATION

THE STATE OF TEXAS §
§
COUNTY OF CAMERON §

BEFORE ME, the undersigned authority, on this day personally appeared MARIA C. TAPIA, who being by me duly sworn on oath stated and said the following:

"My name is MARIA C. TAPIA. I am the sole proprietor of GRUPO HONDURAS, and I am the plaintiff in the above entitled cause. I have read the foregoing Complaint and am familiar with the contents thereof. The facts stated in said Plaintiff's Original Complaint are true and correct to the best of my personal knowledge and belief."

_____
MARIA C. TAPIA d/b/a
GRUPO HONDURAS

SWORN TO AND SUBSCRIBED TO before me by the said MARIA C. TAPIA, to certify which witness my hand and seal of office, on this _7th_ day of November, 2003.

[SEAL: CHRISTINA LOGAN, Notary Public, State of Texas, My Commission Expires June 14, 2005]

_____
Notary Public, State of Texas

My Commission Expires: _6-14-05_

| 1. Agent | |
|---|---|
| DIX SHIPPING<br>5500 R L OSTOS DRIVE<br>BROWNSVILLE TX 78521 U S A<br>956.831.4228 | **WING BRIDGE**<br><br>JUPITER FL  OCTOBER 10 2002 |
| 3. Carrier | 4. Merchant (see Clause 1) |
| WING BRIDGE SHIPPING COMPANY INC<br>1016 CLEMONS STREET<br>SUITE 403<br>JUPITER, FL 33477 U S A | GRUPO HONDURAS<br>133 STARCREST DRIVE<br>BROWNSVILLE TX 78520 U S A |
| 5. Vessel's name | 6. Time for shipment (about) |
| M/V BEACON STRAIT | APRIL 25 – MAY 2 2003 |
| 7. Loading port (or so near thereunto as the vessel may safely get) | 8. Discharging port |
| PORT ISABEL TX | PUERTO BARRIOS GUATEMALA<br>PUERTO CORTES HONDURAS |

9. Particulars furnished by the Merchant

| Marks and Nos | Number and kind of packages, description of goods | Gross weight | Measurement |
|---|---|---|---|
| | STANDARD PERSONAL AUTOMOBILES AND PICKUP TRUCKS BUSES TRAILERS PIGGY BACKS, CRANES, CRANE SECTIONS, AND HEAVY CONSTRUCTION MACHINERY<br>MINIMUM REVENUE USD $30,000.00<br>UP TO 600 LINEAR FEET TRUCKS BUSES TRAILERS AND PIGGYBACKS | | |

Total Number of Packages or Units (in words)

| 10. Freight rate (also indicate whether prepayable or payable at destination) | 11. Merchant's declared value subject extra freight as agreed and additional clause 6 |
|---|---|
| AUTOS/PICKUPS AT A RATE OF USD $425.00 U/S EACH  BUSES, TRAILERS, PIGGYBACKS AT A RATE OF USD $42.00 PER LINEAR FOOT K D CRANE & HEAVY CONSTRUCTION MACHINERY AT A RATE OF USD $35.00 W/M (METRIC) PAYABLE 100% TO CARRIER, ON COMPLETION OF LOADING, AND ON SIGNING, BUT PRIOR TO RELEASE OF BILLS OF LADING<br>MINIMUM $30,000.00 OCEAN FREIGHT | |
| | 12. Demurrage rate (if agreed) |
| | USD $4,800 PER DAY P/R AT LOAD PORT |

13. Merchant's representatives at loading port (state full name and address telegraphic address telephone and telex)

14. Special terms if agreed

PER ATTACHED RIDER (PAGE 3)

- carrier's full style   wing bridge shipping co., inc , 1016 clemons street, suite 403, jupiter, fl 33477  561 745 3134 tel. 561 745 3138 fax

- m.v beacon strait for

- as part cargo, on or under deck, consisting of  autos, buses, trucks, trailers, and k d cranes with freight rate of usd 425 each for autos less than 17' in length, usd 42 per linear foot for truck, buses, and trailers, usd 35 per cubic meter for k d cranes/sections and heavy construction machinery, and having a minimum lump sum freight of usd 30,000   merchant has option to load at the same rates up to 600 linear feet of trucks, buses, and cranes and up to 35 autos. merchant to declare final quantity of units latest 36 hrs prior to vsl's arrival at load port.

- load: carrier's berth, port isabel, texas  U S A

- disch: carrier's berth, puerto cortes, honduras  puerto barrios, guatemala, big creek  belize

- laycan april 25 – may 2 2003

- terms at load port:  free in, 12 hrs satshinc for units that are driven aboard carrier's vessel at load port, with merchant providing and paying for drivers & liner in from alongside vessel for autos trucks  buses, piggy backed units, cranes & boom sections that are to be lifted on to vessel with carrier providing and paying for cranes, crane drivers, merchant's assistance to hook the cargo on the lifting devices, lifting devices, etc   furthers for all cargo loaded, carrier to supply and pay for lashing gear and carrier to pay for lashing labour

- terms at discharge port:  liner out to end of hook

- regarding freight calculation for piggybacked units, note that  piggy backed units are counted as a single unit and the overall length of the unit to be used in calculating freight

- freight 100 pct payable to carrier on completion of loading and on signing, but prior to releasing bills of lading marked "freight prepaid ", and bills of lading to be signed by carrier' or their assign

- merchant's option to pay freight in cash to vsl master or carrier's local assign. freight  deemed earned as loaded prorata and is discountless non returnable whether vessel and or cargo lost or not lost

- any taxes dues duties fees whartage on cargo and or freight or calculated on same for merchant's account at load and discharge port, further shipper to consign cargo to his customs agent at discn port and this agent to prepare import documentation, receiving of vehicles and pay all expenses in connection with the receiving of the vehicles once cgo is discharged from vessel

- any taxes , dues , fees , port expenses , dockage  etc  on vessel at load and discharge port for carrier's account.

- final packing list to be submitted to carrier 36 hours prior to vessel's arrival at load port but minimum cargo as described above, or freight due on the minimum

- ows agents both ends

- carrier's liner booking note with usual liner b/s't to apply as faxed to merchant

- no o/f fee to apply and merchant to prepare bills of lading

1. **Definition.**
Wherever the term "Merchant" is used in this Bill of Lading, it shall be deemed to include the Shipper, the Receiver, the Consignee, the Holder of the Bill of Lading and the Owners of the cargo.

2. **Law**
U.S. Carriage of Goods by Sea Act to apply if the shipment is to or from the United States. If the shipment is not to or from the U.S., then the laws of the country of shipment should apply, but only if such country has enacted the Hague or Hague-Visby Rules. If the country of shipment has not enacted the Hague or Hague-Visby Rules then the law of the country of destination should apply, but only if such country has enacted the Hague or Hague-Visby Rules. Otherwise U.S. COGSA to apply. This clause applies from the time the goods are received by Carrier or its agent until the delivery to the receiver or the receiver's agent and also applies to all cargo whether carried on or below deck.

3. **Jurisdiction**
Both the Carrier and the Merchant expressly agree that should any dispute arise concerning the shipment made under this Bill of Lading exclusive original jurisdiction shall lie in the United States Federal Court in Palm Beach County, Florida. However upon receipt of Service of Process issued out of the Federal Court in Palm Beach County, the party defending any dispute may, within thirty days of said receipt, elect to proceed instead in arbitration in the City of Jupiter, Florida under the rules of the Society of Maritime Arbitrators. Such election shall then be binding upon both parties and each party shall name one arbitrator, with the two arbitrators so chosen nominating an umpire.

4. **The Scope of Voyage**
The intended voyage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the service including maintenance of vessel and crew.

5. **Substitution of Vessel, Transshipment and Forwarding.**
Whether expressly arranged beforehand or otherwise the Carrier shall be at liberty to carry the goods to their port of destination by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination and to transship, land and store the goods either on shore or afloat and reship and forward the same at Carrier's expense but at Merchant's risk. When the ultimate destination at which the Carrier may have engaged to deliver the goods is other than the vessel's port of discharge the Carrier acts as Forwarding Agent only. The responsibility of the Carrier shall be limited to the part of the transport performed by him on vessels under his management and no claim will be acknowledged by the Carrier for damage or loss arising during any other part of the transport even though the freight for the whole transport has been collected by him.

6. **Package Limitation Clause**
Section 4(5) of U.S. Carriage of Goods by Sea Act 1936. Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the Bill of Lading and additional freight has been paid as required. This declaration if embodied in the Bill of Lading shall be prima facie evidence but shall not be conclusive on the carrier.

7. **Lighterage**
Any lightering in or off ports of loading or ports of discharge to be for the account of the Merchant.

8. **Loading, Discharging and Delivery**
of the cargo shall be arranged by the Carrier's agent unless otherwise agreed. Landing, storing and delivery shall be for the Merchant's account. Loading and discharging may commence without previous notice. The Merchant or his Assign shall tender the goods when the vessel is ready to load and as fast as the vessel can receive and – but only if required by the Carrier – also outside of ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the vessel may leave the port without further notice and deadfreight is to be paid. The Merchant or his Assign shall take delivery of the goods as fast as the vessel can deliver and – but only if required by the Carrier – also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be at liberty to discharge the goods and any discharge to be deemed a true fulfillment of the contract. The Merchant shall bear all overtime charges as above. If the goods are not applied for within a reasonable time the Carrier may sell same privately or by auction. The Merchant shall accept its reasonable

(d) The Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through non-observance of Custom House and/or import or export regulations.

11. **Lien**
The Carrier shall have a lien for any amount due under this contract and any costs of recovering same and shall be entitled to sell the goods privately or by auction to cover any claims.

12. **Delay**
The Carrier shall not be responsible for any loss sustained by the Merchant through delay of the goods unless caused by the Carrier's personal gross negligence.

13. **General Average and Salvage**
General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1974 as periodically amended except rule XXII thereof. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by the Carrier salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

14. **Both-to-Blame Collision Clause.** (This clause to remain in effect even if unenforceable in the courts of the United States of America.) If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owner of the said goods paid or payable by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator of those in charge of any vessel or vessels or objects other than or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

15. **Government directions, War, epidemics, Ice, Strike, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any goods on board to risk of seizure or damage or delay resulting from war, warlike operations, blockade, riots, civil commotions or piracy of any person on board to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(c) Should it appear that epidemics, quarantine, ice – labor troubles, labor obstructions, strikes, lock-outs, any of which onboard or on shore – difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and leaving again all of which safely and without delay, the master may discharge the cargo at port of loading or any other safe and convenient port.
(d) The discharge under the provisions of this clause of any cargo for which a Bill of Lading has been issued shall be deemed due fulfillment of the contract. If in connection with the exercise of any liberty under this clause any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight together with return freight if any and a reasonable compensation for any extra services rendered to the goods.
(e) If any situation referred to in this clause may be anticipated or if for any reason the vessel cannot safely and without delay reach or enter the loading port or must discharge cargo at the Carrier may cancel the contract before the Bill of Lading is issued.
The Merchant shall be duly advised.

16. **Identity of Carrier**
The Contract evidenced by this Bill of Lading is between the Merchant and the Owner of the vessel named herein or substitute and it is therefore agreed that said Shipowner only shall be liable for any damage or loss due to

19. **Himalaya Clauses Sub-contractors and Servants**
(a) The Carrier is entitled to subcontract the whole or part of its duties under this contract.
(b) The Merchant undertakes that no claim or allegation shall be made against any person other than the Carrier no matter by whom the Carriage of any part of the Carriage was performed or undertaken which imposes or attempts to impose upon any such person upon any vessel owned by such person any liability whatsoever in connection with the Goods or the Carriage of Goods whether or not arising out of negligence on the part of such person. If any such claim or allegation should nevertheless be made, the Merchant agrees to indemnify the Carrier against all consequences thereof.
(c) Without prejudice to the foregoing every such person by whom the whole or any part of this contract is performed or undertaken including but not limited to underlying Carriers, stevedores, terminal operators, sub-contractors and independent contractors shall have the benefit of every exemption, limitation, condition and indemnity herein contained and of every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier as if such provisions were expressly for the benefit of such persons and in entering into this contract the Carrier to the extent of these provisions does so not only on its own behalf but also as an agent and trustee for such persons.
(d) The Merchant further undertakes that no claim or allegation in respect of the Goods which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods whether or not arising out of negligence on the part of the Carrier shall be made against the Carrier by any person other than in accordance with the terms and conditions of this Bill of Lading, and if any such claim or allegation should nevertheless be made, the Merchant agrees to indemnify the Carrier against all consequences thereof.



_____   4/17/03
SIGNATURE                         Carrier


_____
SIGNATURE                         Merchant